IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| FRANKLIN DAGGS, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 02-C-449-E |
| ALEXANDER & ALEXANDER, INC. (Oklahoma); ALEXANDER &ALEXANDER SERVICES, INC.; AON GROUP, INC.; ALEXANDER &ALEXANDER, INC.; AON RISK SERVICES, INC.; ALEXANDER & ALEXANDER PENSION PLAN; AON PENSION PLAN; ALEXANDER & ALEXANDER THRIFT PLAN; and AON SAVINGS PLAN, | ) |
| Defendants. | ) |

O R D E R

The Court, upon consideration of the evidence presented at trial, the briefs submitted, and arguments of counsel, enters the following findings of fact and conclusions of law:

Findings of Fact

**1.** This case was brought pursuant to Section 502(a) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. 1132(a)(1)(B). Plaintiff's ERISA claim is based on the denial of Earning Continuation and the denial of Long Term Disability benefits. He claims that the decisions to deny these benefits were "arbitrary and capricious."

**2.** The Court adopts the findings of fact and conclusion of law previously entered by Judge Brett in the initial related litigation;

**3.** Judge Brett held that the Defendants had acted arbitrarily and capriciously in failing to

investigate plaintiff's claims and therefore ordered that plaintiff be allowed to submit his disability claim for consideration. After the review ordered by Judge Brett, plaintiff was granted "earnings continuation" payments beginning May 17, 1995 and continuing until September 20, 1995. He was denied Long Term Disability Benefits. These are the determinations that plaintiff now claims violate ERISA.

**4.** Plaintiffs ERISA claims are controlled by the Alexander & Alexander Services, Inc. Disability Benefits Plan and the Benefits Handbook.

**5.** The Plan provides the following definitions

> 1.5 <u>COMPANY</u> means Alexander & Alexander Services Inc. And any successor entity.
>
> 1.9 <u>EMPLOYEE</u> means a person who is an employee of the Employer regularly scheduled to work thirty (30) or more hours per week for the Employer (as determined by the Employer). Notwithstanding the foregoing, the term Employee shall not include (a) any employee of the Employer who is a member of a collective bargaining unit covered under a collective bargaining agreement unless the collective bargaining agreement provides for the employee's participation in the Plan, and (b) any leased employee of the Employer.
>
> 1.13 <u>PARTICIPANT</u> means an Employee who becomes a Participant pursuant to Article 2.

**6.** The Plan also provides, in Article 2.2, that "[a] Participant's participation in the Plan shall terminate on the earliest of the following dates: (a) The day on which the Participant terminates employment . . . . (b) The day on which the Participant ceases to qualify as an Employer or a Participant. . . ."

**7.** The Benefits Handbook, p. 80, also contains provisions relevant to plaintiffs claims:

> [I]f you are disabled because of an illness or injury and cannot work for five or more consecutive days, you may receive Earnings Continuation benefits during a disability lasting up to 180 days. Earnings Continuation benefits are provided by A&A at no cost to you, and the amount you receive is based on your length of service.
>
> A serious disability may leave you out of work for a long period of time, or perhaps permanently. The Long Term Disability plan pays benefits if you have a disability

lasting more than 180 days.  Your Choice offers you the opportunity to purchase Long Term Disability insurance.  You may choose from several levels of income replacement.

**8.**  Eligibility for the Plan is also governed by the Handbook, p. 82, 87, 88:

All salaried employees who work 30 or more hours a week are eligible for Earnings Continuation.

You may participate in the LTD Plan if you are an active salaried employee who works at least 30 hours per week and earns at least $500 a month.

The Plan begins to pay you a monthly benefit after you have been disabled for at least 180 days out of a 240-day period, or continuously for a period of 180 days.  You are *disabled* if, because of injury or sickness: you are completely unable to perform any and every duty of your regular occupation; and After benefits have been paid for 60 months, you are completely unable to perform the material duties of any gainful occupation for which you are reasonably suited by training, education, or experience.

**9**.  The Handbook also provides, at p. 93, that eligibility for LTD coverage ends ". . . the date your employment ends or your eligibility for coverage ends (including your salary continuation period). . ."

**10.**  Plaintiff was employed by Alexander and Alexander from 1974 until May 17, 1995.

**11.**  Plaintiff filed his disability claim on May 15, 1995 after being hospitalized for 5 consecutive days.

**12.**  As of May 17, 1995,  plaintiff's participation in the Plans terminated because he was no longer an employee.

**12**.  Plaintiff returned to work in the insurance industry in Mid-September, 1995 when he went to work for Employee Leading Service/North American Trucking Association.  This is the date relied on by the Plan Administrator.

**13.**  There was no credible evidence before the administrator or the Court of any later date for

3

plaintiff's return to work.

**14.** As of September 20, 1995, Plaintiff failed to meet the definition of disabled as set forth in the Plan documents.

**15**. The Disability Claims Manager for Aon Corporation granted plaintiff "earnings continuation" payments beginning May 17 and continuing until September 20, 1995. The manager concluded that Mr. Daggs was capable of working after September 1995 because he did work after that time performing some duties similar to those he performed at A &A.

**16**. Plaintiff worked continuously in the insurance industry from September, 1995 until February 5, 1997.

**17**. It is clear that when plaintiff gained employment in the insurance industry in September of 1995, plaintiff was no longer a "participant" in the Plan.

**18**. Rehabilitative employment was only intended for employees who were participants in the Plan.

**19**. Met-Life, a neutral third party, made the initial decision on plaintiff's LTD claim. In making its analysis, Met-Life fully examined the medical evidence submitted by plaintiff.

**20**. Plaintiff appealed the initial denial of LTD benefits and additional Earning Continuation benefits.

**21.** Plaintiff's appeal was denied because he was not "disabled" as defined in Plans because of his return to work, and because, after May 17, 1995, he was no longer an employee or a participant.

**22**. The evidence before the administrator (and before the Court) fails to establish "disability" as defined by the Plan: "completely unable to perform any and every duty of your regular occupation."

**23.** There is no evidence that there were two periods of disability that could be linked.

**23**. Any findings of fact that are actually conclusions of law should be considered as such.

Conclusions of Law

**1.** Jurisdiction and venue are appropriate in this Court.

**2.** Where, as here, the Plan gives the Administrator discretion to make determinations as to eligibility and benefits, those decisions are to be reviewed under an "arbitrary and capricious standard." *Firestone Tire & Rubber Co. V. Bruch*, 489 U.S. 101, 115 (1989).

**3**. In reviewing a decision under this standard, the Court is limited to the administrative record. *Allison v. Unum Life Insurance Company of America*, 381 F.3d 1015, 1021 (10th Cir. 2004).

**4**. Where a conflict of interest exists, a sliding scale analysis should be applied, "where the degree of deference afforded to the plan Administrator is inversely related to the 'seriousness of the conflict.'" *Id*. The "sliding scale" test has been refined in instances where an inherent conflict of interest exists, as it does here.

> When the plan administrator operates under . . . an inherent conflict of interest, . . . the plan administrator bears the burden of proving the reasonableness of its decision pursuant to this court's traditional arbitrary and capricious standard. In such instances, the plan administrator must demonstrate that its interpretation of the terms of the plan is reasonable and that its application of those terms to the claimant is supported by substantial evidence.

*Fought v. Unum Life Insurance Company of America*, 379 F.3d 997 (10th Cir. 2004).

**5**. Here, it is clear that plaintiff was given a full and fair review of his claim, and that the medical records submitted were reviewed.

**6.** Defendant's interpretation of its Plans is reasonable and substantial evidence supports the denial of the claim.

**7.** It was not arbitrary and capricious to rely on plaintiff's subsequent employment, among other things, as a basis for finding that plaintiff was not disabled. Moreover, it was not arbitrary and capricious to determine that plaintiff returned to work in mid-September, 1995.

8. *Wilcott v. Matlack, Inc.,* 64 F.3d 1458, 1461 (10th Cir. 1995) does not support plaintiff's claim that it defendants were arbitrary and capricious in relying on plaintiff's subsequent employment as a reason for finding that plaintiff did not have a "disability" as defined in the Plans. In *Wilcott*, the Circuit approved the fact that "echoing the physician's own views," the "district court deemed plaintiff's subsequent aborted attempts at employment to be consistent with this disability, rather than, as defendants contend, evidence of an unused capacity for work." In the present case, there is no similar physician opinion, and plaintiff was able to work approximately 17 months instead of one. Defendant's decision to treat the employment as evidence of ability to work rather than an "aborted attempt at employment []consistent with [plaintiff's] disability," is supported by substantial evidence and a reasonable reading of the plan.

**9**. Any conclusions of law that are actually findings of fact should be considered as such.

    IT IS SO ORDERED THIS 13th DAY OF JANUARY, 2006.

_____
JAMES O. ELLISON, Senior Judge
UNITED STATES DISTRICT COURT